IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| S.C., | : |
| | : |
|     Petitioner, | : |
| v. | :   CASE NO. 4:23-CV-64-CDL-MSH |
| | :         28 U.S.C. § 2241 |
| Warden, STEWART DETENTION CENTER, | : |
| | : |
|     Respondent. | : |

## ORDER AND RECOMMENDATION

Pending before the Court is Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) and Respondent's motion to dismiss the application (ECF No. 14). For the reasons explained below, it is recommended that Respondent's motion be denied, and Petitioner's application be granted in part and denied in part. Also pending is Petitioner's motion for preliminary injunction (ECF No. 8), which the Court recommends be denied as moot.

## BACKGROUND

Petitioner, a native and citizen of Jamaica, was initially admitted into the United States on October 28, 2014, pursuant to a B2 temporary visitor visa, and later gained lawful permanent residency.[1] Scolnick Decl. ¶ 4, ECF No. 6-1; Scolnick Ex. A, at 3, ECF No. 6-2. On August 28, 2017, Petitioner was convicted in the United States District Court for the

---

[1] Because all documents have been electronically filed, this Order and Recommendation cites to the record by using the document number and electronic screen page number shown at the top of each page by the Court's CM/ECF software.

Middle District of Florida of conspiracy to import and to possess with intent to distribute five or more kilograms of cocaine and one hundred or more kilograms of marijuana and was sentenced to 60 months' imprisonment followed by 36 months' of supervised release. Scolnick Decl. ¶ 5; Scolnick Ex. B, at 2-4, ECF No. 6-3.  On July 30, 2021, while Petitioner was incarcerated at McRae Federal Correctional Institute, the Department of Homeland Security ("DHS") served him with a notice to appear ("NTA") before an immigration judge ("IJ"), charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction for an aggravated felony.  Scolnick Decl. ¶ 6; Scolnick Ex. C, at 2-3, 5, ECF No. 6-4.  Petitioner applied for asylum, and a merits hearing was held before an IJ via video conference on January 21, 2022.  Scolnick Decl. ¶ 7.  The IJ denied Petitioner's asylum application, sustained the charge of removability, and ordered Petitioner's removal.  *Id.*; Scolnick Ex. D, at 2-3, ECF No. 6-5.  On February 16, 2022, Petitioner timely appealed the IJ's removal order to the Board of Immigration Appeals ("BIA"), and the BIA dismissed his appeal on June 7, 2022, making his removal order final that day.  Scolnick Decl. ¶ 9; Scolnick Ex. E, at 4-7, ECF No. 6-6; *see* 8 C.F.R. § 1241.1(a).

Petitioner fist entered United States Immigration and Customs Enforcement ("ICE") custody on February 14, 2022, and he has remained detained since that time.  Scolnick Decl. ¶ 8.  ICE Enforcement and Removal Operations ("ERO") requested a travel document from the Jamaican consulate on June 24, 2022.  Scolnick Decl. ¶ 11.  On July 6, 2022, however, Petitioner filed a Petition for Review ("PFR") with the Eleventh Circuit Court of Appeals.  Scolnick Decl. ¶ 13.  He also filed an emergency motion to stay his removal, which the Eleventh Circuit denied on July 25, 2022.  *Id.*; Scolnick Ex. F, at 2,

ECF No. 6-7. Petitioner filed a second PFR on January 3, 2023, along with another motion to stay his removal. Scolnick Decl. ¶ 17; Scolnick Ex. H, at 2-5, ECF No. 6-9. The Eleventh Circuit denied the second motion to stay removal on January 13, 2023. Scolnick Decl. ¶ 18; Scolnick Ex. I, at 2, ECF No. 6-10. Nevertheless, on April 3, 2023, the Jamaican consulate informed ERO that it could not issue a travel document because of Petitioner's pending PFR. Scolnick Decl. ¶ 20. On August 31, 2023, upon motion of the Government, the Eleventh Circuit remanded Petitioner's case back to the BIA. Scolnick Suppl. Decl. ¶ 4, ECF No. 14-1; Scolnick Suppl. Ex. A, at 4-5, ECF No. 14-2. At the time of this recommendation, Petitioner has been detained by ICE for nearly twenty-one months.

The Court received Petitioner's application for habeas relief on April 14, 2023 (ECF No. 1). At the time, Petitioner's detention was governed by 8 U.S.C. § 1231(a), which mandates detention for period of ninety days upon a removal order becoming final and allows for continued detention of certain categories of aliens beyond the ninety-day removal period, including those with an aggravated felony conviction. 8 U.S.C. § 1231(a)(1)(A), (a)(2), (a)(6). Accordingly, Petitioner's application relied on *Zadvydas v. Davis*, wherein the United States Supreme Court read an implicit six-month presumptively reasonable detention period into § 1231(a) and required an alien's release after this period if he or she established there was no significant likelihood of removal in the reasonably foreseeable future. 533 U.S. 678, 689, 699-701 (2001). Upon remand of his immigration case back to the BIA, however, Petitioner's removal order was no longer final, and authorization for his detention shifted from § 1231(a) to 8 U.S.C. § 1226(c), which applies to criminal aliens. *See Bonilla v. Lynch*, 840 F.3d 575, 589 (9th Cir. 2016) (holding that if

3

a final order of removal is vacated, the alien is restored to his pre-final order of removal status).

Following the Eleventh Circuit's remand to the BIA, Respondent moved to dismiss Petitioner's habeas petition, arguing he was not entitled to release under *Zadvydas* because he was no longer detained under § 1231(a). Resp't's Mot. to Dismiss 4-5, ECF No. 14. Respondent also argued Petitioner's detention otherwise complied with due process. *Id.* at 5-10. In response to the motion to dismiss, Petitioner again insisted he was entitled to release under *Zadvydas*, but also asserted his continued detention violated his Fifth Amendment substantive and procedural due process rights. Pet'r's Resp. to Mot. to Dismiss 8, 10, ECF No. 16. Respondent filed a reply brief on November 6, 2023 (ECF No. 19). This case is ripe for review.

## DISCUSSION

Initially, the Court addresses whether Petitioner's habeas application has been rendered moot by remand of his case to the BIA and transition from detention under § 1231(a) to § 1226(c). The Court concludes it does not. The bottom line is that Petitioner seeks release because of the "prolonged" nature of his detention in violation of his Fifth Amendment due process rights. Pet. 1, ECF No. 1. At the time Petitioner filed his petition, he was detained pursuant to § 1231(a), and therefore, he appropriately relied on *Zadvydas* because its framework was specifically crafted to avoid a Fifth Amendment Due Process Clause violation to aliens detained under a statute that by its explicit terms did not limit the length of their detention. *Zadvydas*, 533 U.S. at 689-90. The shift from § 1231(a) to § 1226(c) did not obviate Petitioner's due process argument but simply altered the

4

framework under which it is to be analyzed.

Having determined Petitioner's habeas application has not been mooted, the Court now addresses whether his current detention under § 1226(c) violates due process. As a criminal alien, Petitioner's detention is statutorily mandated. *See* 8 U.S.C. § 1226(c) (stating that the Attorney General "shall take into custody" an alien falling under its provisions and allowing release only under narrow circumstances related to witness protection). Like § 1231(a), § 1226(c) does not set out a specific limit to the length of detention as measured in days, months, or years. Nevertheless, in *Jennings v. Rodriguez*, the Supreme Court rejected lower courts' attempts to apply the canon of constitutional avoidance—as it had done in *Zadvydas*—to conclude there was an implicit temporal limitation against unreasonably prolonged detention without a bond hearing of criminal aliens detained under 8 U.S.C. § 1226(c). 138 S.Ct. 830, 842 (2018). Instead, the Supreme Court interpreted § 1226(c) to provide an explicit limit to the length of detention, which it identified as being the "conclusion of removal proceedings." *Id.* at 846. Therefore, the Supreme Court reversed a lower court decision premised on constitutional avoidance and remanded for consideration of, among other issues, the aliens' constitutional claims. *Id.* at 851.

One lower court decision whose constitutional avoidance rationale was rejected by *Jennings* was the Eleventh Circuit's opinion in *Sopo v. U.S. Att'y Gen.* ("*Sopo I*"), 825 F.3d 1199 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018) ("*Sopo II*"). In *Sopo I*, the Eleventh Circuit concluded there was an implicit temporal limitation against unreasonably prolonged detention without a bond hearing of § 1226(c)

5

detainees. *Sopo I*, 825 F.3d at 1214. In determining whether a criminal alien's due process rights have been violated, the Court rejected a bright-line rule like *Zadvydas* supplied, and instead adopted a case-by-case approach for district courts to follow, noting that "reasonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all circumstances of any given case." *Id.* at 1215 (quotation marks omitted).

The Court identified five factors for district courts to consider. *Id.* at 1217-18. The first—which the Court labeled a "critical factor"—was the length of detention, with the Court suggesting that "a criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case." *Id.* at 1217. The second factor was a consideration of "why the removal proceedings have become protracted." *Id.* at 1218. The Court noted that while criminal aliens should not be "punished for pursuing avenues of relief and appeals," district courts should consider whether the alien has "sought repeated or unnecessary continuances" or acted in bad faith to delay proceedings. *Id.* The Court also identified three other factors: whether removal of the criminal alien would be possible once a removal order became final, whether the civil detention period exceeded the time the alien spent in prison for the crime rendering him removable, and whether the facility where he was detained was "meaningfully different from a penal institution for criminal detention." *Sopo I*, 825 F.3d at 1218. Finally, the Court stated its list was "not exhaustive" and that the factors to be considered would vary depending on the facts of each case. *Id.*

Although *Sopo I* was vacated and its constitutional avoidance rationale rejected by the Supreme Court in *Jennings*, most district courts in the Eleventh Circuit, including this

6

one, have continued to cite it as persuasive authority on due process claims for prolonged detention. *See, e.g., J.N.C.G. v. Warden, Stewart Det. Ctr.*, No. 4:20-cv-62-MSH, 2020 WL 5046870, at *2 (M.D. Ga. Aug. 26, 2020); *Dorley v. Normand*, No. 5:22-cv-62, 2023 WL 3620760, at *4 (S.D. Ga. Apr. 3, 2023), *recommendation adopted by* 2023 WL 3174227 (S.D. Ga. May 1, 2023); *Stephens v. Ripa*, No. 22-20110-CIV-MARTINEZ-BECERRA, 2022 WL 621596, at *2 (S.D. Fla. Mar. 3, 2022) ("The Court agrees with . . . other courts in this Circuit that *Sopo I* remains persuasive authority as to the due process implications of a prolonged detention under § 1226(c)."); *Msezane v. Garland*, No. 5:19-cv-51, 2020 WL 1042293, at *7 (S.D. Ga. Jan. 29, 2020) (collecting cases), *recommendation adopted by* 2020 WL 1046796 (S.D. Ga. Mar. 3, 2020); *Lukaj v. McAleenan*, 420 F. Supp. 3d 1265, 1273-74 (M.D. Fla. 2019) (noting the Eleventh Circuit's "discussion suggests a significant constitutional concern regarding lengthy mandatory detention [under § 1226(c)] without a bond hearing; otherwise, it would not have had any need to use the canon of constitutional avoidance to sidestep what appeared to be a legitimate due process concern"), *vacated on other grounds by* No. 3:19-cv-241-J-34MCR, 2020 WL 248724 (M.D. Fla. Jan. 16, 2020); *Moore v. Nielsen*, No.: 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *13 (N.D. Ala. May 3, 2019) (applying the "persuasive guidance" of *Sopo I* to find the petitioner's prolonged detention without a bond hearing unconstitutional).

Nevertheless, Respondent contends the Court should not conduct a *Sopo I* analysis but instead rely solely on *Demore v. Kim*, 538 U.S. 510 (2003), to find Petitioner's detention constitutional. Resp't's Mot. to Dismiss 10. The Court has rejected this identical

7

argument previously and does so again here. *See J.N.C.G.*, 2020 WL 5046870, at *3-6 (providing a lengthy explanation as to why *Demore* did not "resolve[] the issue" of whether the petitioner's prolonged detention violated due process). In *Demore*, the Supreme Court addressed the constitutionality of mandatory detention under § 1226(c) generally, not whether prolonged detention under § 1226(c) was constitutional. *Demore*, 538 U.S. at 514-515  In fact, Justice Kennedy specifically noted in his concurring opinion that a "lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."[2] *Id.* at 532 (Kennedy, J., concurring). Further, as this Court and other courts have observed, at the time *Demore* was decided mandatory detention of criminal aliens lasted "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530. Therefore, the Court will apply the *Sopo I* factors to analyze the constitutionality of Petitioner's continuing detention.

---

[2] Other courts in the circuit have also found *Demore* non-dispositive to as-applied constitutional challenges to prolonged detention under 8 U.S.C. § 1226(c). *See, e.g.*, *Dorley*, 2023 WL 3620760, at *3 (noting that *Demore* "left open the possibility of as-applied procedural due process challenges to §1226(c) detention, where continued detention becomes unreasonable or unjustified"); *Lukaj*, 420 F. Supp. 3d at 1272-74 (rejecting the Government's reliance on *Demore* in response to a procedural due process challenge to prolonged detention). However, one recent out-of-circuit district court was more receptive to Respondent's argument. *See Hodge v. Garland*,--F. Supp. 3d--, No. 23-CV-447 (JLS), 2023 WL 6856971, at *1, 7 (W.D.N.Y. Oct. 18, 2023) (finding *Demore* "aligns" with the recognition that control over immigration matters "goes to the core of congressional power" and "national sovereignty" and that "[l]enient application of multi-factor tests . . . results in bond hearings and, presumably, in some cases, released detainees" that "arrogates this very sovereignty issue to the judiciary"). This case appears to be an outlier and is inconsistent with the Eleventh Circuit's reasoning in *Sopo I*.

Applying the *Sopo I* factors, the first—length of detention—weighs decidedly in Petitioner's favor. He has now been detained for approximately twenty-one months. This is well beyond the one-year "outer limit of reasonableness" identified in *Sopo I*. 825 F.3d at 1217.

The second factor is an evaluation of why removal proceedings have been protracted. *Id.* at 1218. Again, this factor weighs in Petitioner's favor. There is no evidence Petitioner has failed to participate in his removal proceedings or asked for unnecessary continuances and extensions.[3] In fact, following the entry of his removal order, Petitioner actively pursued PFRs with the Eleventh Circuit. Respondent suggests the fact Petitioner was held under § 1231(a) for the majority of his detention and detained under § 1226(c) for a much shorter time is significant. Resp't's Reply 3 n.3. The Court does not see why. The nature of detention does not vary depending on the particular statute authorizing it. In fact, what the Court finds significant is that ultimately it was the Government which sought to vacate and remand Petitioner's case back to the BIA, indicating some sort of imperfection in the removal order and/or removal proceedings that authorized Petitioner's § 1231(a) detention in the first place.[4] *See Sopo I*, 825 F.3d at 1218 ("Errors by the immigration court or the BIA that cause unnecessary delay are also relevant.").

---

[3] Respondent cites two motions for extension filed in the Eleventh Circuit which amounted to a total of fifty-eight days. Resp't's Mot. to Dismiss 3. Respondent concedes these two extensions do not demonstrate bad faith. Resp't's Reply 5-6, ECF No. 19,

[4] Respondent does not explain why the Government moved to remand Petitioner's case back to the BIA.

Respondent also contends Petitioner failed to participate in interviews with the Jamaican consulate on July 8, 2022, and August 11, 2022.[5] Resp't's Reply 5. This was during the time Petitioner was under a final order of removal and had filed a PFR with the Eleventh Circuit. Respondent admits, however, there were no removal flights scheduled during at least a portion of this period. Resp't's Resp. 6-7, ECF No. 6. And significantly, the Jamaican consulate indicated it would not issue travel documents while a PFR was pending, meaning any delay by Petitioner in sitting down for an interview had no effect on his removal.[6] *Id.* at 4.

The third *Sopo I* factor is whether removal will be possible once the removal order becomes final. *Sopo I*, 825 F.3d at 1218. According to ICE, it regularly removes detainees to Jamaica, and Petitioner presents no credible arguments as to why he could not be removed once his removal order becomes final and he has exhausted his appellate remedies. Scolnick Decl. ¶ 22. Thus, this factor weighs in Respondent's favor.

The fourth factor is "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable." *Sopo I*, 825 F.3d at 1218. Petitioner spent approximately four years in prison, while he has been detained for nearly twenty-one months. Scolnick Decl. ¶¶ 5, 8; Scolnick Ex. B, at 3. This factor

---

[5] Petitioner disputes the contention he failed to cooperate in his removal or interviews with the Jamaican consulate. Pet. 3; Pet'r's Reply 2, ECF No. 7. According to Respondent, Petitioner agreed on September 28, 2022, to an interview with the Jamaican consulate, and the interview was conducted on December 20, 2022. Scolnick Decl. ¶ 16; Resp't's Resp. 4.

[6] This distinguishes Petitioner's case from *K.O.S. v. Warden, Stewart Det. Ctr.*, No. 4:21-cv-118-CDL-MSH, slip op. at 10-11 (M.D. Ga. Oct. 12, 2021) where the petitioner's refusal to take a Covid-19 test was the only impediment to his removal.

weighs heavily in favor of Respondent.

Fifth, and finally, Petitioner's current place of confinement—Stewart Detention Center—is not meaningfully different from a prison. *See Sopo I*, 825 F.3d at 1221 (referring to Stewart Detention Center as a "prison-like facility"). Thus, this factor favors Petitioner.[7]

In summary, three of the five *Sopo I* factors weigh in Petitioner's favor. The Court concludes Petitioner's continuing detention without a bond hearing violates due process. *See Dorley*, 2023 WL 3620760, at *4, 6 (finding twenty months detention without an individualized bond hearing unconstitutional); *O'Neil Richard Clue v. Greenwalt*, No. 5:21-cv-80, 2022 WL 17490505, at *5-6 (S.D. Ga. Oct. 24, 2022) (finding petitioner detained for twenty-four months was entitled to an individualized bond hearing), *recommendation adopted by* 2022 WL 17489190 (S.D. Ga. Dec. 7, 2022). Therefore, the Court recommends Respondent be ordered to provide Petitioner an individualized bond hearing before an IJ within fourteen (14) days of the district judge adopting this recommendation.[8] The Court also recommends Respondent be ordered to follow the

---

[7] In *Sopo I*, the Eleventh Circuit explained its list of factors was "not exhaustive," and it mentioned various other factors courts could consider. *Sopo I*, 825 F.3d at 1218. The Court notes some district courts applying *Sopo I* have identified other relevant factors mentioned in the opinion, including foreseeability of removal proceedings concluding in the near future. *See Dorely*, 2023 WL 3620760, at *4. Considering Petitioner's case has only recently been remanded to the BIA, this would also seemingly weigh in Petitioner's favor.

[8] Petitioner requested release from custody in his prayer for relief. Pet. 11. *Sopo I*, however, did not authorize this, and the consensus is that ordering a bond hearing is the appropriate remedy when the length of detention has become unreasonable. *See Maldonado v. Macias*, 150 F. Supp. 3d 788, 811-12 (W.D. Tex. 2015) (collecting cases).

11

procedures set forth in 8 C.F.R. § 1236.1(c)(8) applicable to non-criminal aliens, and Petitioner be allowed to appeal an adverse decision to the BIA under the procedures outlined in § 1236.1(d). *See Sopo I*, 825 F.3d at 1219 (ordering the Government to apply 8 C.F.R. § 1236.1(c)(8) and (d) to criminal aliens deemed entitled to a bond hearing). Finally, the Court recommends the BIA be ordered to provide Petitioner with the same standard of review applicable to non-criminal aliens detained under 8 U.S.C. § 1226(a). Petitioner shall bear the burden of proving he is not a flight risk or danger to others. *See id.* at 1220 (placing the burden of proof at bond hearings granted to a § 1226(c) detainee on the criminal alien); *Stephens*, 2022 WL 621596, at *4 (placing burden of proof on the criminal alien).

## CONCLUSION

For the foregoing reasons, it is recommended that Respondent's motion to dismiss (ECF No. 14) be **DENIED** and Petitioner's application for habeas relief (ECF No. 1) be **GRANTED IN PART AND DENIED IN PART**.[9] Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. *See* M.D. Ga. L.R. 7.4. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the

---

[9] In light of this recommendation, the Court recommends Petitioner's motion for a preliminary injunction (ECF No. 8) be **DENIED AS MOOT**. Within that motion is a request for an evidentiary hearing, which is **DENIED**.

Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 8th day of November, 2023.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE